SEALED

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 3 - 12CR - 311 - P |
| v. | § | |
| | § | **UNDER SEAL** |
| OLALEKAN SORUNKE (01) | § | |

## INDICTMENT

The Grand Jury charges:

At all times material to this Indictment, unless otherwise specified:

### General Allegations

1.     The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "healthcare benefit program" as defined by Title 18, United States Code, Section 24(b).

2.     Medicare was subdivided into multiple Parts. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as power wheelchairs ("PWCs") and related accessories.

3.      Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries."   Each beneficiary was given a Medicare identification number.

4.      DME companies, physicians and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers."   To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare related laws and regulations.  If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number."  A healthcare provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

5.      Medicare paid DME companies and other healthcare providers for services rendered to beneficiaries.  Medicare would generally pay for DME and related medications only if they were prescribed by the beneficiary's physician and were medically necessary to the treatment of the beneficiary's illness or injury.

6.      To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

7.      CMS contracted with Durable Medical Equipment Regional Carriers ("DMERCs") to provide Medicare benefits and process claims for reimbursement.  The DMERC that processed and paid Medicare DME claims in Texas was CIGNA Government Services ("CIGNA").

8.     To bill Medicare for services rendered, a provider submitted a claim form (Form 1500) to CIGNA.  When a Form 1500 was submitted, usually in electronic form, the provider certified that:  (1) the contents of the form were true, correct and complete; (2) the form was prepared in compliance with the laws and regulations governing Medicare; and (3) the contents of the claim were medically necessary.

9.     A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment or medicine provided to the beneficiary, the date the equipment or medicine was provided, the cost of the equipment or medicine and the name and unique physician identification number of the physician who prescribed or ordered the equipment or medicine.

10.     Lincoln Medical Supply, Inc. ("Lincoln") was a Texas business entity purportedly doing business at 10935 Estate Lane, #274, Dallas, Texas 75238.  Among other things, Lincoln billed Medicare for power wheelchairs, hospital beds for home use and related accessories, and other DME that was not medically necessary and, in some cases, was never provided to the Medicare beneficiaries.

11.     The defendant, **Olalekan Sorunke**, a resident of Rowlett, Texas, was the owner of Lincoln.

## Counts 1-4
## Health Care Fraud
### (Violation of 18 U.S.C. §§ 1347 and 2)

12.    Paragraphs 1 through 11 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

13.    From in or around April 2009, and continuing through in or around August 2011, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendant, **Olalekan Sorunke,** aiding and abetting others known and unknown to the Grand Jury, in connection with the delivery of and payment for healthcare benefits, items and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Medicare.

**Purpose of the Scheme and Artifice**

14.    It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by (a) submitting false and fraudulent claims to Medicare, (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of proceeds from the fraud, and (c) diverting proceeds of the fraud for his personal use and benefit.

## Manner and Means of the Scheme and Artifice

15.    The defendant, **Olalekan Sorunke**, would maintain a valid Medicare provider number for Lincoln to submit claims to Medicare for DME that were not medically necessary and in some cases never provided to Medicare beneficiaries.

16.    The defendant, **Olalekan Sorunke**, would maintain a bank account into which payments from Medicare were deposited.

17.    Lincoln would receive referrals of beneficiaries with a purported need for DME from home health agencies (HHAs) in the Dallas-Fort Worth area.  Lincoln would contact the beneficiaries' physicians to obtain prescriptions for the DME which the beneficiaries purportedly needed based on the referral.

18.    However, even if the HHA referral did not indicate that the beneficiary needed a PWC, Lincoln would attempt to have the beneficiaries' physicians write a prescription for a PWC.  Lincoln did this even though no one from the company had ever seen the beneficiaries or evaluated their need for a PWC.

19.    When Lincoln was not able to obtain a signed prescription for a PWC, Lincoln would either forge a signature on a prescription or deliver a PWC without a physician's approval.

20.    The defendant, **Olalekan Sorunke**, and others would deliver medically unnecessary PWCs to beneficiaries.

21.    The defendant, **Olalekan Sorunke**, and others would deliver heavy duty PWCs to beneficiaries that were rated for individuals weighing over 300 pounds even though the beneficiary to whom the PWC was purportedly provided weighed far less.

22.    The defendant, **Olalekan Sorunke**, would submit approximately $1,502,085.17 in claims to Medicare for DME, including PWCs and related accessories, that were not medically necessary and in some cases, never provided.

23.    The defendant, **Olalekan Sorunke**, would divert the money into the bank account he maintained to his personal use and benefit.

**Acts in Execution of the Scheme and Artifice**

24.    In execution of the scheme and artifice, **Olalekan Sorunke**, caused the submission of the following claims to Medicare for DME that was not medically necessary:

| Count | Medicare Beneficiary | Approx. Date of Claim | Description of Item Billed | Approx. Amount of Claim |
|-------|----------------------|------------------------|----------------------------|-------------------------|
| 1 | D.F. | 7/30/2009 | PWC and accessories | $7,689.71 |
| 2 | T.G. | 9/3/2009 | PWC and accessories | $6,085.71 |
| 3 | M.O. | 9/3/2009 | PWC and accessories | $7,848.18 |
| 4 | C.J. | 1/19/2010 | PWC and accessories | $8,652.27 |

In violation of 18 U.S.C. §§ 1347 and 2.

<u>Notice of Criminal Forfeiture</u>
(18 U.S.C. § 982(a)(7))

25.     Pursuant to 18 U.S.C. § 982(a)(7), the United States of America gives notice to the defendant, **Olalekan Sorunke**, that, in the event of conviction for any of the violations charged in Counts 1 through 4 of the Indictment, the United States intends to forfeit all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of any such offense, including, but not limited to, a money judgment in the amount of at least $768,879.61 in United States currency.

26.     In the event that the property subject to forfeiture as a result of any act or omission of the defendant:

a.     cannot be located upon exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the total value of the property subject to forfeiture, pursuant to 21 U.S.C. § 853(p), incorporated by reference in 18, U.S.C. § 982(b)(1).

A TRUE BILL

FOREPERSON

SARAH R. SALDAÑA
UNITED STATES ATTORNEY


MINDY SAUTER
Assistant United States Attorney
Texas Bar No. 24033114
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8600
Facsimile: 214.659.8812


BENJAMIN O'NEIL
Trial Attorney
U.S. Department of Justice Criminal Division, Fraud Section
D.C. Bar No. 500796
Telephone: 202.615.1272

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

OLALEKAN SORUNKE (1)

SEALED INDICTMENT

18 U.S.C. §§ 1347 and 2
Conspiracy to Commit Health Care Fraud

18 U.S.C. § 982(a)(7)
Forfeiture Notice

4 Counts

A true bill rendered

---

DALLAS                                                                                    FOREPERSON

Filed in open court this_____ day of October 2012

---

                                                                                               Clerk

**Issue Arrest Warrant for : OLALEKAN SORUNKE**

---

UNITED STATES DISTRICT/MAGISTRATE JUDGE
No Criminal matter pending

*Criminal Case Cover Sheet*  Revised 3/5/98

# UNITED STATES DISTRICT COURT ~~ORIGINAL~~

## NORTHERN DISTRICT OF TEXAS

**RELATED CASE INFORMATION**

| | |
|---|---|
| Superseding Indictment/Information: | ___Yes _X_No |
| New Defendant: | _X_Yes ___No |
| Pending CR Case in NDTX: | ___Yes _X_No |

If Yes, Number: **3 - 1 2 CR - 3 1 1 - P**
Search Warrant Case Number: _____
Rule 20 from District of _____

1.  **Defendant Information**

    Juvenile: ___Yes _X_No

    If Yes, Matter to be SEALED:

    _X_Yes _____No

    Defendant Name _____ OLALEKAN SORUNKE (1)

    Alias Name _____

    RECEIVED
    OCT 2 2012
    CLERK, U.S. DISTRICT COURT
    NORTHERN DISTRICT OF TEXAS

    Address _____

    County in which offense was committed: _____ Dallas

2.  **U.S. Attorney Information**

    Mindy Sauter                     Bar #: TX 24033114

3.  **Interpreter**

    ____Yes _X_No   If Yes, list language and/or dialect: _____

4.  **Location Status**

    **ISSUE ARREST WARRANT**

    _____Already in Federal Custody as of
    _____Already in State Custody
    _____On Pretrial Release

5.  **U.S.C. Citations**

    Total # of Counts as to This Defendant: __4__   Petty_____ Misdemeanor_____ Felony _X_

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. §§ 1347 and 2 | Health Care Fraud | 1-4 |
| 18 U.S.C. § 982(a)(7) | Forfeiture Notice | |

Date _____   Signature of AUSA: _____